IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BUTTONWOOD TREE VALUE PARTNERS, LP and FRANKLIN VALUE INVESTORS TRUST—FRANKLIN MICROCAP VALUE FUND, | § § § § § | No. 178, 2015 |
| Plaintiffs Below-Appellants, | § § | Court Below:  Court of Chancery of the State of Delaware, |
| v. | § § | in and for New Castle County |
| MICHAEL J. SULLIVAN, STEPHEN E. FUHRMAN, RONALD V. KAZMAR MICHAEL X. CRONIN, JOHN F. CALHOUN, and CHRISTOPHER M. RODGERS, | § § § § § § § | C.A. No. 9552-VCL |
| Defendants Below-Appellees, | § § | |
| and | § § | |
| CENTRAL STEEL AND WIRE COMPANY, | § § § § | |
| Nominal Defendant Below -Appellee. | § § | |

Submitted:  October 21, 2015
Decided:   October 22, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

## **O R D E R**

This 22nd day of October 2015, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The fiduciary duty claim pled in this case is based on the supposedly wrongful refusal of the directors of Central Steel and Wire Company ("Central Steel") to respond

warmly to offers to acquire the company. The plaintiffs alleged that because the directors of Central Steel are managers of the company and make a nice living from their roles, their decision to refuse to consider the offers were infected by disloyalty and thus supported a non-exculpated claim for breach of fiduciary duty.

(2) In an oral ruling, the Court of Chancery dismissed the claim in part because the defendant-directors were all trustees of a charitable trust that owned 62.1% of Central Steel's shares, and in their capacity as trustees, the directors had concluded that the trust, as controlling stockholder, did not believe that a sale was in the trust's best interests.[1] Primarily, however, the Court of Chancery ruled that because the directors' only self-interest was in their employment as officers and directors, there was no viable claim under this Court's decision in *Gantler v. Stephens*,[2] which the Court of Chancery read as prohibiting a claim for the refusal to entertain an offer unless more than the typical entrenchment motive was present.[3]

(3) We affirm the dismissal, but do not perceive any need to comment on the Court of Chancery's oral explication of *Gantler*. Dismissal was appropriate on a clear ground. As a controlling stockholder of Central Steel, the trust was entitled to refuse to

[1] Transcript of Oral Argument at 67–68, *In re Cent. Steel & Wire Co.*, C.A. No. 9552-VCL (Del. Ch. Mar. 17, 2015).
[2] 965 A.2d 695 (Del. 2009).
[3] Transcript of Oral Argument, *supra* note 1, at 80; *see also Gantler*, 965 A.2d at 707 ("Here, the plaintiffs allege that the Director Defendants had a disqualifying self-interest because they were financially motivated to maintain the status quo. A claim of this kind must be viewed with caution, because to argue that directors have an entrenchment motive solely because they could lose their positions following an acquisition is, to an extent, tautological. By its very nature, a board decision to reject a merger proposal could always enable a plaintiff to assert that a majority of the directors had an entrenchment motive. For that reason, the plaintiffs must plead, in addition to a motive to retain corporate control, other facts sufficient to state a cognizable claim that the Director Defendants acted disloyally.").

sell its 62.1% stake in Central Steel and control of Central Steel could therefore not pass without its consent.[4] Although the trust's relationship to the company is unusual, it is typical, as was the case here, for a controlling stockholder that is an entity of some kind to have its affiliated managers as the top management of a controlled subsidiary. That those affiliated managers derive all or a substantial part of their living from their positions does not mean that an independent claim for breach of fiduciary duty arises when the controlling stockholder does not wish to sell its shares and those affiliates therefore do not entertain a takeover offer dependent on the controller's willingness to sell. In other words, there was nothing here that distinguishes this case from the long-standing rule that a controller does not have to entertain offers.[5] That this is the case, of course, does not mean that the controller or its affiliates are immune from claims for the

---

[4] *See Bershad v. Curtiss-Wright Corp.*, 535 A.2d 840, 845 (Del. 1987) ("Clearly, a stockholder is under no duty to sell its holdings in a corporation, even if it is a majority shareholder, merely because the sale would profit the minority."); *Thorpe v. CERBCO, Inc.*, 676 A.2d 436, 442, 444 (Del. 1996) (observing that one of the "basic precepts of corporate law [is] that controlling shareholders have a right to sell their shares" and explaining that the controlling stockholders had a statutory right to veto a takeover transaction); *Mendel v. Carroll*, 651 A.2d 297, 306 (Del. Ch. 1994) ("No part of [the Carroll family's] fiduciary duty as controlling shareholders requires them to sell their interest."); *Frank v. Elgamal*, 2014 WL 957550, at *21 (Del. Ch. Mar. 10, 2014) ("Because a controlling stockholder has no duty to sell its stock, it has the obvious ability to reject any transaction it does not like."); *In re John Q. Hammons Hotels Inc. S'holder Litig.*, 2009 WL 3165613, at *12 (Del. Ch. Oct. 2, 2009) (noting that a controlling stockholder "could effectively veto any transaction"); *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *12 (Del. Ch. Sept. 3, 1996) ("A majority stockholder in a Delaware corporation owes no duty to sell its holdings in the corporation just because the sale would profit the minority."); *see also* EDWARD P. WELCH ET AL., FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 141.05[C], at 5-40 (6th ed. 2015) (discussing this principle).
[5] *See Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001) (agreeing with the Court of Chancery's conclusion that the majority stockholder had the "right[] to vote down any transaction it did not favor") (internal quotation marks omitted); *Abraham v. Emerson Radio Corp.*, 901 A.2d 751, 762 (Del. Ch. 2006) ("[T]he general rule [is] that controllers are free, as is any other stockholder, to alienate their shares, provided they comply with any transfer provisions in the relevant corporate instruments and in statutory law.").

3

improper exercise of fiduciary power.  If the controller attempts to squeeze out the minority, cause the controlled entity to engage in interested transactions, or other such conduct, the duty of loyalty operates to police the controller's conduct.[6]  But a mere refusal of a controller to allow the entity to be sold does not support a cause of action against it or its affiliated directors.[7]  For this reason, the Court of Chancery's decision to dismiss the complaint below was proper and its dismissal order of March 17, 2015 is affirmed.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*
Chief Justice

---

[6] *E.g.*, *Weinberger v. UOP, Inc.*, 457 A.2d 701, 709–10 (Del. 1983); *Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1061–62 (Del. Ch. 2004), *aff'd*, 872 A.2d 559 (Del. 2005).
[7] *See supra* note 4.